494 P.2d 765

**Martha Kathryn Hazlett O'HAIR, Appellant,**

v.

**Huston Harding O'HAIR, Appellee.**

**Nos. I CA–CIV 1719, I CA–CIV 1637.**

Court of Appeals of Arizona,
Division 1,
Department B.
March 20, 1972.
Rehearing Denied May 8, 1972.
Review Granted June 27, 1972.

Rawlins, Ellis, Burrus & Kiewit, by Norman D. Hall, Jr., Phoenix, for appellant.

Cavness, DeRose, Senner & Rood, by John W. Rood, Phoenix, for appellee.

JACOBSON, Judge.

When a married man places his sole and separate personal property in a joint sav-

ings account and in a joint certificate of deposit with his wife as the joint tenant and the wife exercises the right of control thus granted to her and withdraws funds in the joint accounts, what is the status of the funds thus withdrawn?

This question is presented in this appeal from a judgment of the Superior Court of Maricopa County holding that upon the divorce of the parties, the funds previously withdrawn by the wife were the sole and separate property of the husband.

The plaintiff-appellant, Martha Kathryn Hazlett O'Hair and defendant-appellee, Huston Harding O'Hair, were married in Phoenix, Arizona, in 1947. The parties have three children, ages 15, 18 and 20 at time of trial. At time of trial, the two youngest children were in school, while the oldest child, a daughter, is both legally blind and mentally retarded, but had previously been working for the Industries for the Blind.

During the marriage the parties accumulated various community property consisting of a residence having a net value, after deductions for encumbrances, of approximately $30,000.00, three automobiles, and a $5,000.00 savings account.

In addition, the defendant husband had received from the sale of his sole and separate property acquired by inheritance, the sum of approximately $150,00.00. On September 23, 1968, this sum was placed in a joint savings account at Western Savings & Loan and in various joint certificates of deposit purchased from Western Savings. The plaintiff-wife appeared as a joint tenant with right of survivorship on both the joint savings account and on the certificate of deposit. The wife was given possession of the passbook to the joint savings account.

Some six or seven years prior to trial, the husband had suffered a cerebral accident and had not been gainfully employed since that time. It appears that the wife, prior to the filing of the divorce action, had exercised the right of withdrawal of some of the funds located in the joint savings account at Western Savings and used these withdrawn funds for community living expenses. In addition, she had made withdrawals from the joint savings account at the direction of the husband. The evidence disclosed that all the cash assets of the parties at the time of trial, including various checking accounts had initially come from the joint savings account at Western Savings.

The evidence further disclosed that the husband had entered into numerous unprofitable business ventures which had dissipated a large portion of his inheritance and that the grounds for the wife's divorce were based upon the husband's extramarital relationship with a woman from Texas.

Sometime prior to the wife filing her complaint for divorce, the joint savings account at Western Savings contained the sum of $75,000.00. There was also a $25,000.00 joint certificate of deposit at the same institution. Prior to the commencement of the divorce action, the wife withdrew these sums from Western Savings and established a trust at the Union Bank. The trust agreement provided that the $100,000 corpus of the trust was to be used for her support and maintenance and the support and maintenance of the children of the parties, but no provision was made for the husband. The evidence is in dispute as to whether the husband was aware of the last withdrawal from Western Savings prior to the withdrawal having been made and whether he had acquiesced in the establishment of the support trust at Union Bank.

Further, the testimony is in dispute as to the husband's intention in establishing the joint accounts at Western Savings—the wife contending that the husband wanted her to have one-half the account, while he contended that the sole purpose of establishing the account was to facilitate payment of joint community living expenses and to provide for ease of transfer of the funds to his wife in the event of his death.

At time of trial, the wife was 49 years old and had not been gainfully employed since the marriage.

The trial court, in its judgment awarding the wife a divorce, granted her as her share of the community property the family residence and furniture, two of the auto-mobiles and all of the checking accounts.[1]

The judgment further found that the corpus of the trust established by the wife at the United Bank was the sole and sepa-rate property of the husband; that the wife was entitled to no alimony; and that the wife was not entitled to collect support for the eldest daughter after attaining the age of 21 years. Subsequent to filing of this action, the husband established an ir-revocable trust, to be funded by any prop-erty awarded him by the divorce decree, which provided for the support of the eldest daughter during her lifetime.

The wife on this appeal questioned the propriety of the trial court's judgment in the following respects:

1. The determination that the $100,-000.00 corpus of the United Bank Trust established by her was the sole and separate property of the husband;

2. The failure of the trial court to award her alimony; and

3. The failure of the trial court to re-quire the husband to support the eldest daughter after reaching her 21st birthday.

The two-party bank account has been the source of much litigation and has received the attention of numerous legal scholars.[2]

The cases dealing with this subject arise, as is the fact here, where prior to opening the joint account, all of the money used as a deposit belonged solely to one of the parties.

The difficulty experienced by the courts with this subject stems primarily from the impossibility in capturing the typical joint bank account within the recognized common law concepts of holding property—either real or personal. The joint savings account form utilized by Western Savings in this case and signed by both parties is illustrative of this dilemma:

"The undersigned . . . hereby ap-ply for a *Joint Tenancy Savings Ac-count.* . . . Such account together with all deposits and accumulations there-in shall be held . . . as *joint tenants with right of survivorship and not as ten-ants in common nor community prop-erty.* . . . Association is authorized unless otherwise agreed in writing by Association and all Applicants, without further inquiry, *either before or after the death of any Applicants,* in accordance with writings bearing *any one or more* of Applicants' signatures, to: (1) pay, deliver, or transfer in any way, *all or any part of such account.* . . . (2) ac-cept pledges of such account as security for loans. . . ." (Emphasis supplied.)

This instrument on its face purports to place the account in joint tenancy with right of survivorship. In following com-mon law precepts of joint tenancy, the ac-count passes to the survivor on the death of the "joint tenant." However, the docu-ment deviates from common law joint ten-ancy by authorizing, under its terms, the bank to pay on the signature of only one, all of the funds in said account and thus

1. The actual cash award to plaintiff under the decree amounted to approximately $8,000.

2. *See,* Kepner, "The Joint and Survivor-ship Bank Account—A Concept Without a Name," 41 Calif.L.Rev. 596 (1953); Kepner, "Five More Years of the Joint Bank Account Muddle," 26 U.Chi.L.Rev. 376 (1959); Jones, "The Use of Joint Bank Accounts as a Substitute for Tes-timentary Disposition of Property," 17

U.Pitt.L.Rev. 42 (1955); Sayre, "A Re-view of Iowa Contract Law," 38 Iowa L.Rev. 506, 517 (1953); "Bank Ac-counts: Transfer of Property at Death," 23 U.Chi.L.Rev. 289 (1956); "Dispo-sition of Bank Accounts: The Poor Man's Will," 53 Colum.L.Rev. 103 (1953); Briggs, "The Theories of Joint Bank Ac-counts," 42 Ky.L.Rev. 125 (1953–54); Wellman, "The Joint & Survivor Account in Michigan—Progress Through Con-fusion," 63 Mich.L.Rev. 629 (1965).

destroy the other joint tenant's interest in the account. It is this feature of alienation of a joint tenant's interest that has caused the courts the most difficulty.

Thus, the early cases held that the survivorship feature of joint tenancy accounts was invalid either as an unsuccessful attempt to create a joint tenancy (failure of the four unities concept of common law joint tenancies of deed, time, persons, and interest) thus, being an ineffective gift because of non-delivery, McNabb v. Fisher, 38 Ariz. 288, 299 P. 679 (1931), or an invalid testamentary disposition, Phoenix Title & Trust Co. v. King, 58 Ariz. 477, 121 P.2d 429 (1942). However, through the persistence of the banks and with the help of the legislature,[3] today the *survivorship* aspects of the joint account have generally been upheld.[4]

However, the problem still remains as to what interest, if any, a non-contributing member to the joint account has in the account, during the lives of both signators. This problem, on analysis, is in fact two problems: (1) by what means does the contributing member of the joint account transfer an interest to the non-contributing member? and (2) what is that interest, if any?

In answering both of these questions, the courts have generally utilized two legal theories—gift and contract.

Those courts which have utilized the gift theory in determining both how the non-contributing interest was acquired and what the interest acquired was, necessarily turn upon a determination of the intent of the contributing member at the time the account was opened. Saylor v. Southern Ariz. Bank & Trust Co., 8 Ariz.App. 368, 446 P.2d 474 (1968). Thus, depending upon that intent, courts have held that the non-contributing party acquired both survivorship rights and rights to withdraw during both lives (Kranjcec v. Belinak, 114 Mont. 26, 132 P.2d 150 (1942)); survivorship rights only (In re Estate of Voegeli, 108 Ohio App. 371, 161 N.E.2d 778 (1959)); or the right to withdraw for the benefit of the contributing party only with no survivorship rights or individual withdrawal rights (Landman v. Landman, 136 A.2d 392 (D.C.Mun.App., 1957)).

The problem with the gift approach in ascertaining the interest acquired is that it necessarily overlooks the clear and express terms of the instrument normally signed by both parties giving rise to the account. This writing clearly gives to the non-contributing party both the right of *intervivos* withdrawals and survivorship rights.

Other courts have utilized the theory that the interest acquired by the non-contributing member in the account is by way of the written depository agreement initiating the account. This theory generally speaks in terms of a contract by the contributing party and the bank, with the non-contributing party as a third party beneficiary. Barbour v. First Citizens Nat. Bank, 77 S.D. 106, 86 N.W.2d 526 (1957) [overruled in part by 163 N.W.2d 343 (1968)]; In re Estate of Smith, 199 Kan. 89, 427 P.2d 443 (1967); Urban v. Jackson, Okl., 434 P.2d 889 (1967). Under this theory, depending upon the inclination of the court to impose the parol evidence rule, results vary as to what interest the non-contributing party may acquire.[5]

3. A.R.S. § 6–267 provides:
   "Bank deposits may be made in the name of two or more persons, including minors, payable to either or any of them or payable to either or any of the survivors or the sole survivor, and the deposits or any part thereof and any interest thereon, may be paid to or on order of any of the persons whether the other or others are living or not. The receipt, order, or acquittance of the persons so paid is valid and sufficient release and discharge to the bank for any payments so made. The term 'deposits' include certificates of deposit."

4. *See* Kroll, "Property—Joint Bank Accounts—The Donee's Intervivos Interest," 60 Mich.L.Rev. 972 (1962).

5. Several courts hold that parol evidence is not admissible to vary the written terms of the deposit agreement. In re Estate of Smith, *supra;* Greener v. Greener, 116

Recently a third theory has been enunciated by the Oregon Supreme Court in Greenwood v. Beeson, 253 Or. 318, 454 P.2d 633 (1969). The Oregon Court, following the lead of Professor Wellman in his article "The Joint and Survivor Account in Michigan—Progress Through Confusion", *supra,* has held "where the evidence shows that all of the funds in the account were deposited by only one of the signatories, the other signatory is to be deemed a trustee of the donor's power to withdraw from the account unless the intent to create some other legal relationship is proven." The rationale of both Professor Wellman's article and the Oregon decision is based upon the assumption "that the joint and several account typically is not intended to be for the benefit of the donee signatory of the deposit agreement until the donor's depositor's death."

Aside from the fact that this court does not possess the omniscient power of ascertaining the intent of typical depositors to the millions of joint bank accounts opened in the United States and therefore questions the underlying rationale of the *Greenwood* decision, it appears that a trustee designation of a non-contributing member may create more problems than it solves. For example, where the non-contributing wife uses the power of withdrawal to purchase a new bra and girdle does she hold these items in trust for her contributing husband? Or, if the non-contributing party purchases common stock with the trust fund, is such a party held to the statutory fiduciary standards in the purchase of securities?

Thus, while at first blush, the Oregon approach seems to break new ground, in those cases where the donor's intent was to create a survivorship interest only, the same practical result is reached by the gift theory in those jurisdictions allowing evidence of intent to be introduced.

Insofar as the problems of joint bank accounts are concerned, we first observe that joint bank accounts are obviously here to stay. We also observe that people will continue to use them for a variety of reasons, among which are ease of joint or separate access and facility of distribution after death. The courts, being faced with this banking creature, should accept its existence and treat it for what it is—a form of holding property basically unknown at common law. Having said this, what is the joint bank account form of holding property?

To answer this question, both the theory of gift and contract must be utilized. This is for the reason that from our analysis of this question this court is of the opinion that the legal concepts arising from the use of a joint bank account must be approached from the standpoint of establishing fixed minimal legal rights flowing from that use, not only as to the world in general and to the bank in particular, but also as between joint depositors themselves, applying principles known at common law.

In this regard, we believe that in answer to our first question—by what means does the non-contributing party acquire his interest in this new form of property—the court should apply the same legal principles to the joint bank account type of property form as we do to the common law property forms. Courts have had no reluctance in holding that when a husband causes his sole and separate property to be placed in joint tenancy with his wife, that the husband is presumed to have made a gift to his wife of an undivided one-half interest in such property. Collins v. Collins, 46 Ariz. 485, 52 P.2d 1169 (1935).; Blaine v. Blaine, 63 Ariz. 100, 159 P.2d 786 (1945). Likewise, we should show no reluctance in holding that when a husband places his sole and separate funds in a

Utah 571, 212 P.2d 194 (1949) ; Stanger v. Epler, 382 Pa. 411, 115 A.2d 197 (1955).; Others, however, hold that the realities of ownership may be shown by evidence of the contributing party's intent.

Fecteau v. Cleveland Trust Co., 171 Ohio St. 121, 167 N.E.2d 890 (1960) ; Campagna v. Campagna, 337 Mass. 599, 150 N.E.2d 699 (1958) ; Zander v. Holly, 1 Wis.2d 300, 84 N.W.2d 87 (1957).

joint bank account with his wife, he is presumed to have made a gift to his wife of an undivided one-half interest in such funds. Thus, to the extent of determining how the interest of the noncontributing member is acquired, the gift theory is applicable.

■ Having determined that the interest acquired is by gift, we turn to the question of *what* interest is acquired by the noncontributing member as to the world in general and the bank in particular. We have little difficulty in holding that withdrawals [6] drawn by only one signator on a joint bank account may be accepted both by the bank and by third persons free and clear of any claimed interest of the other signator. Such a conclusion necessarily follows from the language of our statute that "the receipt, order, or acquittance of the persons so paid is valid and sufficient release and discharge to the bank for any payments so made." Whether we classify this statute as a "bank protection" statute or a "creation of interest" type statute is, insofar as the bank and third parties are concerned, immaterial.[7] While our creating statute appears to protect the bank only, this same protection flows, in our opinion, to any third person accepting commercial paper drawn on a joint bank account by either the contributing or non-contributing party. (*See,* A.R.S. § 44–2501 et seq.)

■ Thus we hold, that insofar as third persons or the bank is concerned, the contributing party acquires no rights either of contribution or otherwise against such parties arising out of an acceptance of funds· withdrawn by the non-contributing member from the joint account and as to such parties, the non-contributing party has ·full rights of alienation of his contributing party's interest.

■ As to the rights in a joint bank account, vis-a-vis, the contributing and non-contributing party, we hold in the absence of a written agreement to the contrary that at a legal minimum the parties to a joint bank account acquire an undivided one-half interest in that account. · To hold otherwise would not give effect to their express written agreement that the funds in said account shall be held "as joint tenants with right of survivorship and not as tenants in common, nor community property. . . ." Thus, in determining what is the interest acquired by the parties to a joint bank account, the contract theory is applicable.

This does not mean, however, that all non-contributing members to a joint bank account acquire automatically an undivided one-half interest in that account, for all defenses normally available to a grantor at the inception of the conveyance of his· interest in property should also be available to a contributing party to a joint bank account—fraud, duress, coercion and undue influence. *See,* In Re Creekmore's Estate, 1 N.Y.2d 284, 152 N.Y.S.2d 449, 135 N.E.2d 193 (1956).

■ Also, the foregoing rule is subject to the same exceptions that must accompany all transfers of property, that is, that where the grantor conveys property subject to terms that the grantee is to hold the property in a manner different from that expressed by the conveyance, a constructive trust may occur. *See,* Luplow v. Pasqualetti Properties, Inc., 101 Ariz. 90, 416 P.2d 414 (1966) ; Murillo v. Hernandez, 79 Ariz. 1, 281 P.2d 786 (1955).

■ Having ascertained that inceptively the parties to a joint bank account acquire an undivided one-half · interest therein, may one joint tenant during the

---

6. For the purpose of this discussion we make no distinction between a withdrawal from a joint savings account and a check drawn on a joint checking account.

7. Some courts have differentiated as to the interest acquired by the noncontributing party based upon the type of statutory enactment creating the joint tenancy bank account, that is, no interest is acquired in a "bank protection statute", or a joint tenancy interest is acquired under·a "creation of interest" type statute. · *See* Kroll, "Property—Joint Bank Accounts— The Donee's· Intervivos Interest." 60 Mich.L.Rev. 979–982 (1962).

lives of both, acquire the entire account, thus destroying his co-owner's interest? In the absence of an expressed agreement to do so, or a course of conduct acquiesced in by both, we believe not. As we have previously pointed out, by execution of the deposit agreement, the parties evidenced an intention of creating a joint tenancy property right. One of the attributes of such joint tenancy at common law was the indestructibility of the undivided one-half interest of a joint tenant by an act of the other joint tenant.[8] We do not read the deposit agreement executed by the parties as abrogating that common law attribute. This agreement, after stating that the account "shall" be held as joint tenants, merely "authorized" the bank to accept withdrawals on that account signed by only one of the signators. This latter authorization is consistent with our holding that as to the world the nonsigning signatory waives any rights for acceptance of the withdrawal. However, nothing in the authorization language can be interpreted to mean that he is also waiving any rights as against his co-owner, and in the absence of expressed language in the agreement that this common law right to retain an undivided one-half interest in the balance of the account has been waived, we will not judicially supply the same. *See*, Steinmetz v. Steinmetz, 130 N.J.Eq. 176, 21 A.2d 743 (1941); 161 A.L.R. 71 and cases collected therein.

■ This right to an undivided one-half interest in the balance of the account can, of course, be waived by acquiescence in withdrawals by the co-owner. Cocke v. Cocke, 13 Ariz.App. 57, 474 P.2d 64 (1970). However, acquiescence in withdrawals for purposes which may be mutually beneficial does not mean acquiescence for a withdrawal for which no benefit is bestowed on the non-withdrawer.

In summary, we hold that a joint bank account is a form of holding property under which the co-owners, as to the world, are free to alienate the interest of the other, but as to each other, they hold as joint tenants only with the right of survivorship as to the balance, if any.

■ Applying these principles to the case at hand, there is no evidence that the defendant was operating under any fraud, duress or undue influence when he opened the joint savings account with his wife as the joint tenant. Nor is there any evidence that the husband opened that joint bank account with any express direction that the account was to be held by the parties in any different manner than that expressed by the written terms of the agreement signed by both parties—a joint bank account.

■ It is true that defendant testified he had the subjective, undisclosed intent, that this joint bank account was merely a device to pay community living expenses and to allow his wife to acquire the balance upon his death. However, it has always been the rule that subjective, undisclosed intent cannot prevail over the objective expression of intent which may be fairly inferred from the written document. Vinnell Corp. v. State ex rel. Bob Skousen Contr. Inc., 15 Ariz.App. 576, 490 P.2d 21 (1971).

Therefore, under the circumstances of this case, the parties held the funds in the joint bank account, as between themselves, not as community property nor as tenants in common, but as joint tenants. As such joint tenants, each owned an undivided one-half interest therein, which the other could not destroy. The trial court was therefore in error in awarding the funds in trust in the Union Bank solely to the

8. While one joint tenant could destroy the joint tenancy relationship existing between them, by, for example, conveying his interest to a third party who would then hold with the remaining party as a tenant in common, one joint tenant could not affect the undivided one-half interest in the property of the other joint tenant. *See*, Anno.: "Joint Tenancy—Termination", 64 A.L.R.2d 918.

husband, the wife having an undivided one-half interest therein.

 This then brings us to the question of whether the court erred in denying the wife alimony. We have recently held that the question of alimony is directed to the sound discretion of the trial court, and appellate courts should not interfere unless a clear abuse of that discretion is shown. Huerta v. Huerta, 15 Ariz.App. 211, 487 P.2d 432 (1971); *See*, DeMarce v. DeMarce, 101 Ariz. 369, 419 P.2d 726 (1966). In view of the evidence that the husband will never be able to support himself in the future, let alone the wife, and in view of her physical ability to support herself, we find no abuse of discretion in this case in the court refusing to award alimony. In this regard, the fact that we have awarded to the wife one-half of the $100,000 trust account by this opinion was also persuasive in reaching the conclusion that she is entitled to no alimony.

The last question raised by the wife is the failure of the trial court to provide support for the parties' blind and mentally defective daughter after her 21st birthday. This contention was passed upon by way of dicta in Genda v. Superior Court, 103 Ariz. 240, 439 P.2d 811 (1968). The *Genda* court held that while there may exist a common law duty upon a parent to support his incapacitated child beyond the age of majority, the right to enforce that duty rests in the child and not the other parent. Therefore, such a right may not be enforced by one parent against the other in a divorce proceeding, in the absence of a contract or statute.

The court approves the dicta in the *Genda* case and holds that there being no contract in this case, and Arizona having no statute on this subject, the wife herself, if such a duty was present in this case, is unable to enforce the duty of support of their incapacitated daughter beyond majority.

For the foregoing reasons, the judgment of the trial court insofar as it awards the sums held in trust in the Union Bank to the defendant is reversed with directions to award one-half of those sums to the wife. In all other respects the judgment of the trial court is affirmed.

Reversed in part; affirmed in part.

HAIRE, P. J., and EUBANK, J., concur.