NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In re the Marriage of:

PATRYCIA JEWEL NACKARD, *Petitioner/Appellant*,

*v.*

PATRICK NACKARD, *Respondent/Appellee*.

No. 1 CA-CV 20-0621 FC
FILED 10-14-2021

Appeal from the Superior Court in Maricopa County
No. FN 2018-091830
The Honorable Alison Bachus, Judge

**AFFIRMED**

COUNSEL

Burt Feldman Grenier, Scottsdale
By Elizabeth Feldman, Mary K. Grenier
*Counsel for Petitioner/Appellant*

Jeffrey G. Pollitt PC, Phoenix
By Jeffrey G. Pollitt, Lindsay Cohen, Jennika McKusick
*Co-Counsel for Respondent/Appellee*

Berkshire Law Office PLLC, Tempe
By Keith Berkshire, Erica Leavitt
*Co-Counsel for Respondent/Appellee*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Samuel A. Thumma and Chief Judge Kent E. Cattani joined.

---

**C A M P B E L L**, Judge:

¶1        Patrycia Nackard (Wife) appeals from the decree dissolving her marriage to Patrick Nackard (Husband). She challenges the superior court's classification and allocation of certain businesses and its denial of her request for an award of attorneys' fees. Because Husband inherited the businesses as his sole and separate property and the community enjoyed the profits and increase from the businesses during the marriage, the superior court properly allocated the businesses to Husband. Additionally, the superior court acted within its discretion in denying Wife's request for fees. Accordingly, we affirm.

**BACKGROUND**

¶2        After 36 years of marriage, Wife petitioned for dissolution. The superior court adopted the parties' partial settlement agreement, entered summary judgment rulings designating some businesses as community property (the community businesses) and other businesses as Husband's separate property (the contested businesses), held a two-day trial on contested issues, and entered a decree of dissolution.

¶3        In the decree, and specific to this appeal, the superior court: (1) reaffirmed its summary judgment rulings;[1] (2) found the community "enjoyed the profits" from the contested businesses during the marriage and therefore "no additional apportionment of Husband's separate entities" was warranted; (3) determined Husband's distribution of profits from the contested businesses to the community "did not constitute

---

[1]        Despite the superior court's prior ruling on Husband's motion for summary judgment, the character of the contested businesses was fully litigated at trial. Wife was not foreclosed from presenting any evidence on any issue, and at the conclusion of the trial, the court confirmed its prior ruling: "After carefully considering the evidence presented at trial, the Court continues to find that the [contested businesses] are Husband's sole and separate property."

transmutation or commingling"; (4) awarded the community businesses to Husband with corresponding offsets to Wife for her one-half share in each; (5) ordered Husband to pay Wife an equalization payment of $665,057.99; (6) reaffirmed the parties' property settlement agreement, which, among other things, awarded Wife $1.9 million in unencumbered real estate and financial accounts totaling more than $700,000; (7) awarded Wife indefinite spousal maintenance of $10,000 per month; and (8) denied both parties' requests for attorneys' fees and costs. Wife timely appealed.

## DISCUSSION

### I.    Characterization of the Contested Businesses

¶4        Wife challenges the superior court's characterization of the contested businesses as Husband's separate property.

¶5        "The characterization of property as separate or community is a question of law we review de novo." *Schickner v. Schickner*, 237 Ariz. 194, 199, ¶ 22 (App. 2015). In conducting our review, we "defer to the [superior] court's determination of witnesses' credibility and the weight to give conflicting evidence." *Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998); *see also Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 16 (App. 2009) ("Even though conflicting evidence may exist, we affirm the [superior] court's ruling if substantial evidence supports it.").

¶6        The character of property is established at its acquisition, *Myrland v. Myrland*, 19 Ariz. App. 498, 503 (1973), and property acquired by a spouse during marriage "by gift, devise or descent . . . is the separate property of that spouse," A.R.S. § 25-213(A). While it is "possible" to change the separate character of property, in the absence of an "agreement, gift or commingling," separately acquired property remains separate in nature. *Myrland*, 19 Ariz. App. at 503-04.

¶7        The parties married in 1982. Although Husband owned some interest in his family's businesses before the parties' marriage, he acquired the balance of the businesses two years after the marriage. Specifically, upon his father's death, Husband inherited a soft drink bottling distributorship (the bottling company), a land subsidiary, a wholesale liquor subsidiary, and a trucking subsidiary.

¶8        Wife does not dispute that these inherited businesses, the predecessors to the contested businesses (the predecessor companies), became Husband's separate property at the time of their acquisition. Instead, she argues that she acquired a community property interest in the

contested businesses because Husband "transmuted and commingled [the inherited] separate property into community property."

¶9            "Mere mutations of form do not of themselves work a transmutation of the character of property." *Porter v. Porter*, 67 Ariz. 273, 283 (1948), *declined to follow on other grounds by Cockrill v. Cockrill*, 124 Ariz. 50 (1979). Rather, "separate property remain[s] separate as long as it can be identified," and it is only when "the identity of separate property is lost" and cannot be traced that "transmutation takes place." *Id.*

¶10            At trial, Wife testified that during most of the marriage, she believed the parties jointly held the contested businesses as community property. As support for this contention, Wife presented: (1) corporate meeting minutes of the predecessor companies, which for a time identified her as a "shareholder," and (2) expert opinion testimony that she is a "beneficial owner" of the contested businesses, though not a record shareholder.

¶11            Husband, in turn, testified that he owns the contested businesses as his separate property. When confronted with the corporate meeting minutes identifying Wife as a shareholder of the predecessor companies, Husband testified that the designations were erroneous, noting that Wife was the one who had drafted the documents. *See Porter*, 67 Ariz. at 284-85 (holding the inclusion of wife's name on notes, mortgages, and contracts relating to the purchase of real property with husband's separate funds did not transmute the separate property to community property because no evidence demonstrated "that the insertion of the wife's name in the conveyances was by the direction of the husband"). Husband also pointed out that Wife was not included as a shareholder, owner, or officer in the 2008 operating and restructuring agreements converting the contested businesses from C corporations to S corporations. Finally, Husband presented evidence that the only time Wife held any shares in either the predecessor companies or the contested businesses was on a single day in 1992, when, for estate-planning purposes, he transferred 25% of his ownership interest in the bottling company to Wife, which she then immediately transferred to trusts for the benefit of the parties' two children.

¶12            Wife first argues that a community interest in the contested businesses is evidenced by corporate documents that identify her both as a corporate officer and a shareholder. Pointing to her designation on certain liquor licenses, Wife asserts that she served as a corporate officer for the contested businesses and is therefore an owner. In his trial testimony, Husband denied Wife's claim to an officer role, testifying that she never

held any management position and operated only in an administrative capacity. Regardless, Wife cites no authority for the proposition that a corporate officer necessarily maintains an ownership interest in that corporation, and our research reveals none. *See* A.R.S. § 10-802 ("A director need not be . . . a shareholder of the corporation."). Nor does Wife cite any authority for the proposition that an individual's "shareholder" designation on corporate minutes necessarily establishes that individual's ownership interest in the corporation absent any other evidence demonstrating an actual acquisition of shares. *See* A.R.S. § 10-140(44) (defining a "shareholder" as a "person in whose name shares are registered in the records of a corporation or the beneficial owner of shares to the extent of the rights granted by a nominee certificate on file with a corporation"); *see also Potthoff*, 128 Ariz. at 565 (holding evidence that husband's separate property was listed as community property on some of the parties' federal income tax returns did not transmute the separate property into community property); *Myrland*, 19 Ariz. App. at 503 (holding wife's deposit of her separate business monies into a jointly held bank account did not constitute a gift to the community); *cf. Grant v. Grant*, 119 Ariz. 470, 471-72 (App. 1978) (concluding wife gifted husband a community interest in her separate stock by specifically instructing her attorney to place the stock in joint tenancy ownership).

¶13        Here, Wife's expert did not testify that she was a shareholder. Instead, Wife's expert opined that she was a beneficial owner only, and Wife does not challenge Husband's assertion that she was only an actual shareholder of one predecessor company for a single day as part of an estate planning device to transfer shares to the parties' children. Therefore, consistent with the superior court's findings, none of the cited corporate documents conclusively establish a community interest in the contested businesses.

¶14        Next, Wife asserts that the community acquired an interest in the contested businesses when (1) Husband changed the name of the trucking subsidiary and (2) the community acquired a snack and vending subsidiary. Again, Wife cites no authority for her assertion that simply changing the name of a separately held business during marriage transmutes the character of the business from separate to community, and our research reveals none. Further, Wife fails to explain how the community's acquisition of the snack and vending subsidiary transmuted the separate nature of the predecessor companies. At trial, Husband testified that he used his separate funds from the bottling company to retire debts owed by the community's subsidiary company, effectively consolidating all outstanding debts from the various businesses into the

bottling company. Had Husband used the community's assets to pay off his separate property debt, transmutation of the separate property, in the absence of clear tracing, *may have* occurred. *See Potthoff*, 128 Ariz. at 562 (explaining "transmutation of separate to community property by operation of law" occurs only when "property of identical character, such as money, is so mixed together that a court is unable to tell how much money was originally separate and how much was originally community," and the satisfaction of a "separate obligation with [traceable] community funds . . . at most . . . [provides the community with] a claim for reimbursement"); *see also Nace v. Nace*, 104 Ariz. 20, 23 (1968) ("[T]he mere commingling of funds does not have the effect of destroying the identity of . . . separate property as long as it can be identified."). But contrary to Wife's apparent contention, a spouse's use of separate monies to extinguish a community debt does not transmute the nature of that spouse's remaining separate property. *See Battiste v. Battiste*, 135 Ariz. 470, 473 (App. 1983) (explaining the occasional use of separate funds for community purposes does not transmute the character of the underlying source of the funds or convert the remaining balance of the separate funds to community property).

¶15　　　　In sum, the superior court properly characterized the contested businesses as Husband's separate property. The uncontroverted record reflects that Husband, alone, inherited the predecessor companies from his father. Wife failed to present compelling evidence that he transmuted the nature of his separate property by agreement, gift, or commingling.[2]

## II.　　Allocation of the Contested Businesses

¶16　　　　Wife next challenges the superior court's allocation of the contested businesses to Husband. Citing her labor contribution to the contested businesses on behalf of the community and the length of the

---

[2]　　We find no merit to Wife's contention that Husband, in omitting her from the restructuring of the contested businesses, violated a fiduciary duty owed to her. Because the contested businesses were Husband's separate property, he owed Wife no fiduciary duty in his management of them. *See* A.R.S. § 25-214(A) ("Each spouse has the sole management, control and disposition rights of each spouse's separate property."); *cf. Gerow v. Covill*, 192 Ariz. 9, 18, ¶ 40 (App. 1998) (explaining "that a fiduciary relationship between spouses does exist with respect to community assets," and the "[r]emoval of community assets without spousal notice and/or approval can constitute a breach of that duty").

parties' marriage, Wife argues that the use of any apportionment methodology "must be rejected" in this case.

¶17 We review a superior court's apportionment of property for an abuse of discretion. *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523, ¶ 4 (App. 2007). Although the "increase" and "profits" of a spouse's separate property are "the separate property of that spouse," A.R.S. § 25-213(A), "[a]ll property acquired by either husband or wife during the marriage is . . . community property . . . except for property that is . . . [a]cquired by gift, devise, or descent." A.R.S. § 25-211(A). The supreme court resolved the potential conflict between these statutory provisions by adopting an apportionment rule that allocates the profits or increase of separate property "in accordance with whether they are the result of the individual toil and application of a spouse or the inherent qualities of the business itself." *Cockrill*, 124 Ariz. at 52.

¶18 When the value of separate property has increased, a spouse asserting that the increase is separate must "prove that the increase is the result of the inherent value of the property" and "not the product of the work effort of the community." *Id*. But even if the spouse fails to carry this burden, only "profits or the increase in value" of the separate property "may become community property." *Id*. Meaning, "the separate property of the spouse remains separate." *Id*. This principle holds even when both spouses have "work[ed] to improve the property during marriage." *Id.*; *see also Myrland*, 19 Ariz. App. at 502-04 (holding that husband's employment by wife's businesses, both before and during the marriage, did not change the character of wife's businesses from separate to community).

¶19 Without adopting a "precise criterion or fixed standard" for allocating the profits or increase of separate property, the supreme court has presented two approaches for equitable apportionment that are applicable to this case: (1) "determine the reasonable value of the community's services[,] allocate that amount to the community, and treat the balance as separate property attributable to the inherent nature of the separate estate," or (2) "allocate to the separate property a reasonable rate of return on the original capital investment," with "[a]ny increase above this amount" allocated to the community. *Cockrill*, 124 Ariz. at 54 (citation omitted); *see Rueschenberg v. Rueschenberg*, 219 Ariz. 249, 254, ¶ 19 (App. 2008) ("The entire purpose of . . . implementing apportionment was to achieve a more equitable result.").

¶20 Both before and after her father-in-law's death, Wife worked for the predecessor companies in various capacities, including sales,

training, administration, and payroll. While her employment was not continuous and her office presence waned after the parties had children, Wife remained involved with the contested businesses for most of the parties' marriage and received significant annual compensation in the several years preceding the divorce.

¶21 At trial, both parties' experts testified that the contested businesses did not generate a reasonable rate of return during the marriage, failing even to keep pace with inflation. In fact, Wife's expert agreed that had Husband simply liquidated the predecessor companies when he inherited them and invested the money in stock, the stock would have a greater present-day value than the contested businesses. The parties also agreed that either the community or the parties' children received all net distributable earnings from the contested businesses, not Husband individually, and that the parties shared all compensation. As explained by Husband's expert, had the profits not been distributed to the community, the contested businesses would have experienced substantially higher growth and a reasonable rate of return. But because the community enjoyed all that increase during the marriage, there was no increase to allocate upon divorce.

¶22 Reframing her transmutation argument, Wife first contends that because the net distributable earnings "were hopelessly commingled" with other community assets and "never traced back to separate property," the contested businesses became community property and "what began as an inherited business is now a community asset subject to equitable division." Without question, the character of the net distributable earnings was transmuted from separate to community when the funds were distributed to the community, and Husband has never claimed otherwise. But contrary to Wife's contention, the transmutation of the character of the profits did not simultaneously transmute the character of the source of those profits. In other words, the contested businesses remained distinct and separate from the disbursements. *See Cockrill*, 124 Ariz. at 52.

¶23 Turning to equitable principles, Wife next asserts that "[i]t is illogical and unconscionable" that she would gift an interest in "an entity *to which she allegedly has no interest* to her children." In making this claim, Wife fails to acknowledge the uncontroverted evidence that Husband transferred a portion of his separate property shares in the bottling company to her for estate planning purposes, and that she only held those shares momentarily before transferring them to the parties' children. Given the sequence of these transfers, and this "straw person" transaction apparently undertaken to satisfy legal requirements for the transfer to the

children, Wife's contention that she would not have made the gifts to the parties' children had she not detrimentally relied on Husband's representations that the predecessor companies were community assets is unpersuasive. The superior court could have concluded that a reasonable person in Wife's position would have realized that the predecessor companies were not community property simply because of her participation in the "straw-person" transaction used as an estate planning mechanism to transfer an interest in the company to the children. In fact, had Wife owned an interest in the company, the initial stock transfer would have been unnecessary.

¶24 Further, Wife contends that she was deprived of the contested businesses' increase because the profits were disbursed and spent, leaving no allocatable rate of return. This claim lacks merit. At trial, Wife detailed the parties' robust lifestyle during the marriage, and apart from subsidizing the parties' living expenses, the net distributable earnings also funded the community's accumulation of wealth. As the joint owner of these accumulated community assets, Wife received substantial property in the dissolution decree, including unencumbered real property worth at least $1.9 million and nearly $1.5 million in liquid assets. While Wife would have received a portion of the contested businesses' increase had Husband simply reinvested the companies' profits rather than disbursing them to the community, she instead benefited from the companies' profits throughout the marriage and received her one-half share of the community assets acquired during the marriage at divorce—assets that were unquestionably acquired, at least in significant part, with disbursement proceeds from Husband's separate property business. Simply put, the trial evidence shows that the community received the benefit of the contested businesses' increase during the marriage and that Wife received her community share of that accumulated benefit upon divorce. For these reasons, we also reject Wife's contention that the community's payment of taxes on the net disbursement earnings transmuted the contested businesses. The community, not Husband alone, received the benefit of the contested businesses' increase in value and paid the taxes accordingly.

¶25 In sum, we find no merit to Wife's contention that she received nothing from the contested businesses' increase despite her community labor contribution during the marriage. The uncontroverted record reflects that she received both compensation for her labor and a community interest in the contested businesses' profits. Notwithstanding the length of the parties' marriage and Wife's contribution of labor on behalf of the community, substantial justice does not require an allocation of Husband's separate property to the community. Wife is not entitled to

dispossess Husband of his inheritance, which was and remains his sole and separate property.[3]

## III.    Denial of Request for Attorneys' Fees

¶26         Wife argues the superior court improperly denied her request for an award of attorneys' fees under A.R.S. § 25-324, which authorizes an award of attorneys' fees after considering both parties' financial resources and the reasonableness of their positions throughout the proceedings. We review the superior court's ruling on an attorneys' fees request under this statute for an abuse of discretion. *Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 6 (App. 2014).

¶27         Both parties requested an award of attorneys' fees and costs. Considering both prongs of A.R.S. § 25-324, the superior court found that Husband has "considerably more resources" and that "both parties acted unreasonably," with neither acting "more unreasonable than the other." Without further explanation, the court denied both parties' requests.

¶28         The record supports each of the superior court's findings. Although Husband has greater financial resources available to contribute toward attorneys' fees, a financial "disparity alone does not mandate an award of fees." *Myrick*, 235 Ariz. at 494, ¶ 9. Because A.R.S. § 25-324 is permissive, not mandatory, the superior court "has the discretion to deny a fee request even after considering both statutory factors." *Id*. We conclude the superior court did not abuse its discretion in denying Wife's fee request.

---

[3]         We also find no merit to Wife's contention that the superior court "**committed reversible error**" by failing to recognize that it could reject all allocation methods and simply find the character of the contested businesses community in nature to achieve substantial justice. In making this argument, Wife correctly notes that the superior court found no recognized methodology for awarding a spouse a 50% "sweat equity" interest in the other spouse's separate property, as Wife requested. But the superior court further found no basis to apply a "sweat equity" apportionment analysis because the "community enjoyed the profits of Husband's separate properties during the marriage" and "that enjoyment constitutes 'substantial justice' under the case law."

## CONCLUSION

**¶29** For the foregoing reasons, we affirm the decree of dissolution. Both parties request an award of attorneys' fees on appeal under A.R.S. § 25-324. In our discretion, we deny both requests but award Husband his taxable costs upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED: AA