555 P.2d 1121

Hajime HAMADA and Toshiko Hamada, his wife, Appellants,

v.

The VALLEY NATIONAL BANK of Arizona, a National Banking Association, Appellee.

No. I CA–CIV 3145.

Court of Appeals of Arizona, Division 1.

Sept. 23, 1976.

Jennings, Strouss & Salmon by Thomas J. Trimble and Steven C. Lester, Phoenix, for appellants.

Gust, Rosenfeld, Divelbess & Henderson by Richard A. Segal and John M. McVey, Phoenix, for appellee.

## OPINION

HOWARD, Chief Judge.

This is an appeal from a summary judgment awarding appellee $50,000.

The facts show that two individuals, Mr. Peterson and Mr. Steven Carr, formed a Utah corporation called Planformation, Inc. On October 5, 1970, Norman E. Smith, a commercial loan officer at the Valley National Bank approved a $5,000 loan to Planformation secured by some corporate accounts receivable. Mr. and Mrs. Peterson pledged to the bank 253,000 shares of stock in a corporation called Pilot Titanium. He also furnished the bank with a financial statement which showed the value of the pledged stock as being 5¢ per share. From October 5, 1970 on, Planformation borrowed various sums of money from the bank and on May 26, 1971, it owed $24,719. On June 11, 1971, Planformation wanted to borrow another $10,000. Mr. Peterson had previously contacted Mr.

Hamada, an acquaintance, and had him write a letter addressed to Mr. Peterson agreeing to buy 250,000 shares of Pilot Titanium stock for 20¢ per share. Peterson told Hamada the purpose of the letter was to show a market value for the stock. This letter was given to Mr. Smith at the bank. Mr. Smith decided he wanted to obligate Hamada directly to the bank, so he drafted the following letter which he gave to Peterson:

". . .

Dear Mr. Smith:

It is my understanding that Ted Peterson has pledged 233,000 shares of his Pilot Titanium restricted stock as collateral for a loan made by the Valley Bank to Planformation, Inc. I am personally associated with Planformation and I hereby agree, upon demand by the Valley Bank, to purchase up to 250,000 shares of Pilot Titanium stock from Ted Peterson with proceeds payable to Valley National Bank at 20¢ per share with the total dollar amount not to exceed $50,000.

This letter is in conformation (sic) of and replaces my undated letter addressed to Ted J. Peterson written in the fall of 1970, covering the same subject matter."

Although the letter recites that the bank had made a loan to Planformation, the fact of the matter was that the bank had given Planformation a line of credit, not a loan. Sometime after June 11, 1971, Mr. Hamada typed the letter drafted by the bank on his own letterhead and mailed it to Mr. Peterson, who in turn forwarded it to the bank. Thereafter, various loans were made to Planformation. As of July 30, 1971, Planformation owed the bank $34,719. On that date, the bank's ledger card shows a payment of $34,719. On August 10, 1971, a new loan was made to Planformation in the amount of $34,719.

From August 10, 1971, to October 6, 1971, various loans were made leaving a balance of $44,719. From October 6, 1971, to January 3, 1972, Planformation borrowed $30,050.50 and paid the bank

$74,759.50 leaving a zero balance as of January 3, 1972, when Planformation again borrowed $44,719 signing a promissory note in connection with the loan for the same amount. The note was due February 2, 1972, but was not paid, although interest through February 2, 1972 was paid. On March 10, 1972, the bank applied $6,000 from Planformation's bank account against the note, reducing it to $38,719. No further sums were paid.

In September 1971, the bank obtained a formal continuing guarantee in the amount of $50,000 from the Petersons and the Carrs. It did not secure such a document from the Hamadas.

On December 13, 1971, Mr. Hamada's attorney wrote a letter to Mr. Smith advising him that it had not been Mr. Hamada's intention to unconditionally guarantee the money Mr. Peterson was borrowing and that the " . . . situation is ambiguous and worrisome to all concerned." The letter also asked Mr. Smith to put a hold upon "this file" pending a more complete review.

On September 14, 1972, the bank demanded that the Hamadas buy the Pilot Titanium stock pursuant to the letter of June 11, 1971.

Needless to say, Planformation went bankrupt and this suit was filed. The Petersons and Carrs were defendants below on the basis of their continuing guarantee. As to the Hamadas, the complaint alleged the execution of the letter of June 11, 1971, and that its effect was to guarantee the repayment of the loan or, in the alternative, that the letter constituted a binding contract between the Hamadas and the bank obligating the Hamadas to pay the balance due on the promissory note executed January 3, 1972.

The bank filed its first motion for summary judgment which was denied by Judge C. Kimball Rose. After Judge Rose was transferred to the criminal calendar, the bank filed this motion for summary judgment which was granted.

Appellants contend that summary judgment was improper for two reasons: (1) The existence of genuine issue of material facts which precluded judgment and (2) lack of jurisdiction to enter an in personam judgment.

■ When presented with a motion for summary judgment, the trial court has the duty to examine the record and determine whether there is a disputed material fact. *Kaufman v. City of Tucson*, 6 Ariz.App. 429, 433 P.2d 282 (1967). It is axiomatic that when a disputed material fact exists summary judgment is improper.

Appellants have set forth several instances of factual dispute. However, we choose to deal with the two most obvious ones. In so doing we do not pass upon the validity of the other defenses which appellants have raised. The first issue is whether Mr. Hamada's letter constituted a continuing guarantee. Appellee sought to avoid this issue below in its motion for summary judgment by claiming it waived any contention that the letter constituted a guarantee and was suing solely on a contractual basis. Appellee wishes to isolate the effect of the letter in order to avoid issues involved in the law of guaranty such as whether a renewal of the loan without the consent of the Hamadas constituted a release of their guarantee. We do not believe that appellee can confine appellants to the "four corners" of the letter.

■ A latent ambiguity is one where the language employed is clear and intelligible and suggests but a single meaning, but some extrinsic fact or extraneous evidence creates a necessity for an interpretation or a choice among two or more possible meanings. Since the detection of a latent ambiguity requires a consideration of facts outside the instrument itself, extrinsic evidence is obviously admissible to prove the existence of the ambiguity, as well as to resolve any ambiguity proven to exist. *McCarty v. Mercury Metalcraft Co.*, 372 Mich. 567, 127 N.W.2d 340 (1964); *Consolidated Ranches, Inc. v. Chase Land & Cattle Co.*, 242 Or. 95, 408 P.2d 203 (1965).

**436**

A latent ambiguity exists in this case since there was not just a single loan made to Planformation and Mr. Peterson but a series of loans based on a continuing line of credit.

 The extrinsic evidence in this case raises a question of whether the letter of June 11, 1971, was intended by the parties to be an unconditional agreement to purchase the stock or whether it was a guarantee. The intent of the parties to an ambiguous contract is a question of fact which cannot properly be resolved on motion for summary judgment. *Cram v. Sun Insurance Office, Ltd.*, 375 F.2d 670 (4th Cir. 1967).

The other obvious issue is the position of Mrs. Hamada in this case. She did not sign the letter of June 11, 1971. The judgment was against Hajime Hamada and Toshiko Hamada, his wife. In her affidavit filed in opposition to the motion for summary judgment, Mrs. Hamada stated that she did not consent to or have any prior information of the execution and delivery of the letter of June 11, 1971 by her husband. She further stated she was not a stockholder, director or employee of Planformation, Inc., and that she received no benefits from her husband's execution of the letter of June 11, 1971 or the loan from Valley Bank to Planformation on January 3, 1972.

The husband, as a member of the community, has no power under the law without the knowledge and consent of his wife, to use community assets to guarantee the payment of a debt of a stranger to the community, it deriving no benefit therefrom. *Perkins v. First National Bank of Holbrook*, 47 Ariz. 376, 56 P.2d 639 (1936). The community is not liable for a debt contracted by the husband in no way connected with the community and from which the community receives no benefit. *Cosper v. Valley Bank*, 28 Ariz. 373, 237 P. 175 (1925). This law has now been codified in A.R.S. Sec. 25–214(C)(2) which requires both spouses to join in any transaction of guaranty, indemnity or sure-

tyship. Thus there is a factual issue which prevented summary judgment against the community.

 As for the issue of in personam jurisdiction, the Hamadas were served pursuant to Rule 4(e)(2), 16 A.R.S., Rules of Civil Procedure. We believe that the execution of the letter which Mr. Hamada knew was going to be used in a transaction in Arizona provided sufficient minimal contact with this state for it to exercise jurisdiction under the foregoing rule.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

KRUCKER and HATHAWAY, JJ., concur.

NOTE: This cause was decided by the Judges of Division Two as authorized by A.R.S. Sec. 12–120(E).