666 P.2d 520

**ARIZONA FEEDS, an Arizona corporation, Plaintiff/Appellee,**

**v.**

**A & R ARGO, INC., and Arizona corporation; George R. Ripps and Paula Ripps, husband and wife, Defendants/Appellants.**

No. 2 CA–CIV 4582.

Court of Appeals of Arizona, Division 2.

March 28, 1983.

Rehearing Denied May 2, 1983.

Review Denied June 23, 1983.

Monroe, Wilson & Collins by Mark L. Collins, Tucson, for plaintiff/appellee.

Dennis A. Rosen, Tucson, for defendants/appellants.

## OPINION

BIRDSALL, Judge.

This appeal is from a judgment of the trial court sitting without a jury[1] in favor of the trial court plaintiff, Arizona Feeds and against the defendant-appellant, A & R Argo, Inc. and at least as to part of the judgment against the appellants, George R. Ripps and Paula Ripps, husband and wife.

1. The trial started with a jury. The parties stipulated to waive the jury and the jurors were

Arizona Feeds filed its complaint against A & R for a balance due on a loan agreement in the amount of $16,803.25. It joined the Ripps as defendants alleging that George R. Ripps, on behalf of the marital community, guaranteed the obligations of A & R under the loan agreement.

A & R counterclaimed against Arizona Feeds for damages of $162,000 in either contract or tort.

Eventually A & R admitted owing the balance of $16,803.25 and trial was held on the counterclaim.

The trial court made findings of fact and conclusions of law pursuant to Rule 52(a), Rules of Civil Procedure, 16 A.R.S. and found in favor of Arizona Feeds on the counterclaim. The court also ruled that the community was liable upon the guarantee signed by the husband and awarded interest on the original obligation together with attorney fees for Arizona Feeds on both the complaint and the defense of the counterclaim.

On appeal the Ripps community contends that the husband could not bind it on the guaranty without the wife's signature. A & R contends that the court erred in denying relief on the counterclaim because:

1) Negligence of Arizona Feeds in the performance of its contract with A & R caused damages for which it was liable.

2) An oral modification of the parties' written agreement was breached, resulting in damage to A & R.

We affirm as to the counterclaim but reverse the judgment as to the community and Mrs. Ripps.

The facts giving rise to this litigation and necessary to an understanding of this decision are not in dispute except for A & R's claim that the parties agreed orally to change the terms of their written agreements.

The appellee is in the feed and cattle feeding business. A & R is in the cattle business. The two parties, in a series of

excused.

contracts,[2] agreed that the appellee would provide a line of credit for A & R to pay for the feed and feeding of its cattle furnished by the appellee.

Paragraph 4 of the Feeding and Security Agreement stated in part:

"Feeder shall use its best efforts to provide proper facilities, rations, and services for said cattle, but shall not be responsible for any loss to the cattle by injury, death, disease, or any other cause, other than that caused by the gross negligence or illegal act of Feeder, in which event, Feeder shall compensate Owner for any loss caused thereby."

The same agreement also contained the following language in paragraph 12:

"Owner acknowledges and agrees that no representations, guarantees or warranties have been made as to gain, death loss or otherwise by Feeder and that this Agreement, together with referenced Schedules (which are incorporated herein and made a part hereof by reference) contain the entire understanding between the parties and no employee of Feeder has made, or is authorized to make, any representations beyond this Agreement, or to change the terms hereof, unless such changes are in writing and signed by a duly authorized officer of Feeder."

▆▆▆ A & R contends, and evidence was admitted to show, that despite this provision in that agreement, Arizona Feeds agreed that its feeding operation would meet certain performance standards, that is, that the conversion ratio (rate of weight gain by the cattle to weight of feed) would meet a certain norm and that the death loss of cattle would not be greater than the norm. Other evidence contradicted the proof of such an oral agreement, and the trial court implicitly found that no such agreement was made. Although none of the facts found by the court specifically address this question, there is implied in every judgment the findings of fact, in addition to the express findings made by the trial court, which are necessary to sustain the judgment where such additional findings are reasonably supported by the evidence and are not in conflict with express findings. *In re Holman's Adoption,* 80 Ariz. 201, 295 P.2d 372 (1956); *Myrland v. Myrland,* 19 Ariz.App. 498, 508 P.2d 757 (1973). This implicit finding, that no oral modification of the written agreements was made, is supported by the testimony of officers of Arizona Feeds who were present and participated in the meeting where it is claimed the agreement was made. Nor is the finding in conflict with other findings made by the court. The only reference to the alleged oral agreement in the judgment is contained in conclusion of law 6, "Even if promises were made by Plaintiff as to death loss, conversion rate and daily growth rate, such promises were without consideration, and furthermore a modification of the parties' written agreement requires a written contract signed by some duly authorized person."

Unfortunately this business venture was apparently unsuccessful for A & R because, as found by the trial court:

．　　．　　．　　．　　．

"4. During the fall of 1978 unusually heavy rains fell in Maricopa County causing flooding to Plaintiff's feed lot in Maricopa, Arizona.

5. The flooding caused unusual stress and death among the cattle being kept and fed by Plaintiff.

6. The performance of cattle depends on many factors among which are the age of the feeder cattle, their size, their place of origin, their condition at the time of their being put on the feed lot, the kind of feed that they are fed, etc. In this instance there occurred a heavy rain and flood, occurrences which the Plaintiff did not contribute [sic] and which could not

---

**2.** There were four documents signed by the two corporations:
(a) Feeding and Security Agreement,
(b) Security Agreement for Hedging Account,

(c) Agreement in Livestock Security Agreement, and
(d) Livestock Loan Agreement and Committment.

have been anticipated by it. Such flooding caused a great deal of stress among the cattle."

## Negligence

■ The appellant, A & R, argues that paragraph 4 of the Feeding and Security Agreement does not limit the liability of Arizona Feeds to gross negligence. It recognizes that liability for negligence can be limited by contract. *See Valley National Bank v. Tang,* 18 Ariz.App. 40, 499 P.2d 991 (1972). However, it argues that the language in paragraph 4 "any other cause" is too general and therefore the losses arising from the "hedging" and the weather, are governed by ordinary negligence standards. We disagree. It is readily apparent that Arizona Feeds did not agree to be liable for losses to the cattle from any simple negligent act, only from gross negligence or illegal act. The language is clear and unambiguous and the provisions were properly enforced. *C & T Land & Development Company v. Bushnell,* 106 Ariz. 21, 470 P.2d 102 (1970); *Kintner v. Wolfe,* 102 Ariz. 164, 426 P.2d 798 (1967).

## The Oral Modification

We have already discussed this aspect of the case to the extent that we have held the trial court's implicit finding that there was no such oral agreement is supported by the evidence and within the law. However, we will consider each of the A & R arguments in the light of that finding.

■ A & R first urges that there can be a modification of a written agreement without further writing. We agree. *See Harbor Mechanical, Inc. v. Arizona Elec.,* 496 F.Supp. 681 (D.Ariz.1980). However, since A & R failed to prove the oral agreement there is no such modification. The burden to prove the oral agreement was that of A & R. *Thermo-Kinetic Corporation v. Allen,* 16 Ariz.App. 341, 493 P.2d 508 (1972). A & R argues that one item of evidence, a "performance adjustment" check given A & R, is conclusive of the existence of such oral agreement. We disagree. Other evidence showed this payment

was made as an accommodation to "keep Mr. Ripps happy". Apparently the trial court believed that testimony. A & R relies on this same exhibit as the basis for an estoppel argument. This argument is that, having paid A & R a "performance adjustment" check, the appellee is estopped from denying the oral modification. Not only does this argument fail because of the finding that no oral modification was made, it must also fail because there is no evidence A & R relied on such a promise to its detriment. The parties had agreed to their contractual business relationship—A & R did not change its position from the initial agreements. *See Glitsos v. Kadish,* 4 Ariz. App. 134, 418 P.2d 129 (1966).

## The Guaranty

■ Mrs. Ripps did not join in the guaranty. A.R.S. § 25–214(C)(2) requires such joinder. The statute reads:

"C. Either spouse separately may acquire, manage, control or dispose of community property, or bind the community, except that joinder of both spouses is required in any of the following cases:

. . . . .

2. Any transaction of guaranty, indemnity or suretyship."

Even though the cattle business was for the benefit of the community, the wife's signature on the guaranty is necessary before the community can be bound. *See GAF Corp. v. Diamond Carpet Corp.,* 117 Ariz. 297, 572 P.2d 125 (App.1977); *Hamada v. Valley National Bank,* 27 Ariz.App. 433, 555 P.2d 1121 (1976).

The judgment is affirmed except that as to Paula Ripps and the marital community of Paula and George R. Ripps, it is reversed.

HOWARD, C.J., and HATHAWAY, J., concur.