3 P.3d 1082

**In re the Marriage of Linda Lee VANCE–KOEPNICK, Petitioner–Appellee,**

v.

**Russell Gary KOEPNICK, Respondent– Appellant.**

**No. 1 CA–CV 98–0644.**

Court of Appeals of Arizona, Division 1, Department A.

Dec. 9, 1999.

Review Denied May 23, 2000.

Barry L. Brody, Phoenix, for Petitioner– Appellee.

Roger D. Smith, Scottsdale, for Respondent–Appellant.

## OPINION

KLEINSCHMIDT, Judge.

¶ 1 This case examines whether loans that the husband guaranteed in connection with his business are, as between the husband and the wife, allocable to the marital community upon dissolution of marriage. We conclude that they are not, and we affirm the judgment of the trial court.

¶ 2 The parties were married in February 1996. Before that, the husband owned a corporate business, Phoenix Biomedical, Inc. During the marriage the business suffered reversals, and the husband was unable to draw a salary from it. In October 1996 the corporation borrowed $40,000 from a person named Sandra Lowe and the husband executed a promissory note on behalf of the corporation and personally guaranteed its repayment. The wife did not sign the guaranty. The husband testified that the purpose of the loan was to keep the business alive so that he could draw a salary from it.

## THE GUARANTY THE HUSBAND SIGNED IS HIS SOLE OBLIGATION

■ ¶ 3 The trial judge ruled that the guaranty of the Lowe loan was the sole and separate obligation of the husband. The husband appealed. He relies on *Hofmann Co. v. Meisner*, 17 Ariz.App. 263, 497 P.2d 83 (1972). In that case, the husband personally guaranteed a corporate debt and when the corporation could not pay, the creditor sued the husband and the wife on the guaranty. *See Hofmann*, 17 Ariz.App. at 265, 497 P.2d at 85. The creditor claimed that although the wife had never signed the guaranty, the marital community was liable for the debt because the husband, who drew income from the corporation, had been acting for the benefit of the community when he signed. The court agreed and allowed the creditor to reach community assets. *Id.* at 267–68, 497 P.2d at 87–88.

¶ 4 The holding in *Hofmann* has been abrogated by the 1973 enactment of Arizona Revised Statutes Annotated ("A.R.S.") section 25–214(C)(2). Under the old version of the statute, A.R.S. section 25–214(A) (1972), the husband had been the sole manager of the marital community. Section 25–214(C)(2) changed that, and it reads, in relevant part:

C. Either spouse separately may acquire, manage, control or dispose of community property, or bind the community, except that joinder of both spouses is required in any of the following cases:

. . . .

2. Any transaction of guaranty, indemnity or suretyship.

■ ¶ 5 The plain words of this statute have been construed to mean that the community is not bound by any guaranty that is not signed by both spouses, even though the guaranty was for a business that benefitted the marital community. *See Consolidated Roofing & Supply Co. v. Grimm*, 140 Ariz. 452, 458, 682 P.2d 457, 463 (App.1984); *Arizona Feeds v. A. & R. Argo, Inc.*, 136 Ariz. 420, 423, 666 P.2d 520, 523 (App.1983).

■ ¶ 6 Alternatively, the husband asserts that section 25–214(C)(2) applies only against third party creditors and not between divorcing spouses. He does not cite any law in support of this proposition, and there is a good reason why we believe he is incorrect. The law is found in the section of the statutes dealing with marital and domestic relations. The purpose of such statutes is to protect one spouse against obligations undertaken by the other spouse without the first spouse's knowledge and consent. *See* William Q. DeFuniak and Michael J. Vaughn, *Principles of Community Property* § 164, at 392–93 (2d ed.1971). Although our own cases do not explicitly discuss the matter, they imply that such is the intent of our statute. *See Hamada v. Valley Nat'l Bank*, 27 Ariz.App. 433, 436, 555 P.2d 1121, 1124 (1976) (husband had no power to use community assets to guarantee debt without knowledge and consent of wife); *see also Geronimo Hotel & Lodge v. Putzi*, 151 Ariz. 477, 480, 728 P.2d 1227, 1230 (1986) (section 25–214 protects both spouses' interest in community property). That purpose would be frustrated if the husband in this case were able to charge the wife's interest in the community with the debts he guaranteed.

164

## THE HUSBAND'S AGREEMENT TO PAY LEGAL FEES IS HIS SOLE OBLIGATION

¶ 7 During the marriage, two lawsuits were filed against the corporation and the husband personally. The husband hired a law firm to defend the suits, and he signed an agreement on behalf of his corporation and on his own behalf to pay the firm's fees. The wife was not informed of the agreement and did not sign it. The agreement includes the following language:

As we have discussed, Phoenix Biomedical, Inc. (dba Phoenix Keratek, Inc.), and you personally, agree to be responsible, jointly and severally, for payment of all attorney's fees and disbursements incurred with Fennemore Craig. Your ownership of stock in Phoenix Keratek and PBLC Company (PBLC being the holder of the patents) predates your February 1996 marriage to Linda. You own 80% of PBLC Company. You have maintained your personal assets as separate property, except only for 3% of the stock in Phoenix Keretek which you have given to your wife Linda. She has no interest in PBLC Company. You do not intend to and will not give Linda any interest in PBLC Company or any additional interest in Phoenix Keratek. She does have her own separate assets from a prior marriage. Your signature will bind your separate assets as well as your share of community property assets.

█ ¶ 8 The trial judge ruled that this obligation was the sole responsibility of the husband. With respect to so much of the obligation that is a guaranty of the corporate debt for attorneys' fees, our analysis is the same as applied to the Lowe guaranty discussed above. The agreement, however, has another facet, because in it, the husband agreed to pay fees arising out of the lawsuits that were brought against him personally. He argues that his defense of these suits benefitted the community and that the obligation should be imposed on the community.

¶ 9 We do not believe the trial judge abused his discretion in attributing the entirety of this debt to the husband. For one thing, the husband does not argue how much of the debt was attributable to work done on behalf of the corporation and how much related to efforts undertaken on behalf of the husband personally. Moreover, we assume that the lawsuit arose out of the set of facts that gave rise to the suits against the corporation. The agreement evinces a clear intent on the part of the husband and his attorneys to preserve the separate nature of the husband's interest in the corporation. Under these circumstances, it was not inequitable to allocate the debt incurred to the husband alone. *See Toth v. Toth*, 190 Ariz. 218, 221, 946 P.2d 900, 903 (1997) (equitable means fair, which depends on the facts; unequal distribution is proper if supported by "sound reason").

¶ 10 The orders of the trial court assigning liability for the Lowe debt and the debt for legal fees to the husband are affirmed.

¶ 11 The requested attorneys' fees of both parties on appeal are denied.

CONCURRING: NOEL FIDEL, Presiding Judge, and REBECCA WHITE BERCH, Judge.