FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE LARRY MILLER, *Debtor*, | No. 14-16854 |
| FIRST COMMUNITY BANK, *Plaintiff-Appellant*, | D.C. No. 2:13-cv-02050-NVW |
| v. | OPINION |
| MAUREEN GAUGHAN, Chapter 7 Trustee, *Defendant-Appellee*. | |

Appeal from the United States District Court
for the District of Arizona
Neil V. Wake, District Judge, Presiding

Argued and Submitted October 18, 2016
San Francisco, California

Filed March 31, 2017

Before: A. Wallace Tashima and Milan D. Smith, Jr.,
Circuit Judges, and Edward R. Korman,[*] District Judge.

Opinion by Judge Korman

---

[*] The Honorable Edward R. Korman, Senior District Judge for the U.S. District Court for the Eastern District of New York, sitting by designation.

## SUMMARY[**]

### Bankruptcy

The panel reversed the district court's reversal of the bankruptcy court's summary judgment in favor of a creditor that brought an adversary proceeding against a chapter 7 trustee, seeking a declaration that the creditor had an enforceable judgment lien on real property, thereby granting it priority over the proceeds of the trustee's sale of the property.

The judgment on which the lien was based arose from a guaranty signed by the debtor but not by his wife. The couple were Arizona domiciles. The panel held that while the real property, a San Francisco co-op apartment owned by both spouses, was not community property under California law, it was a tenancy-in-common. Under California law, the interests of a co-tenant-in-common are subject to the enforcement of a judgment lien. Applying California's choice-of-law rules, the panel held that California law, rather than Arizona law, governed. Therefore, the debtor's interest in the co-op was subject to enforcement of the judgment lien. The panel rejected the argument that the creditor's registration of the judgment in the Northern District of California was sufficient, by itself, to create an enforceable lien against the co-op.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Joseph E. Cotterman (argued), Andante Law Group PLLC, Scottsdale, Arizona, for Plaintiff-Appellant.

Steven J. Brown (argued), Steven J. Brown & Associates LLC, Phoenix, Arizona, for Defendant-Appellee.

## OPINION

KORMAN, District Judge:

Larry and Kari Miller, both Arizona domiciliaries, owned a cooperative apartment located at 2170 Jackson Street in San Francisco, California. The co-op was held in each of their names, as husband and wife. First Community Bank, a judgment creditor of Larry Miller, obtained a lien against the Millers' co-op.

Under Arizona law, the co-op would be treated as community property. *See* A.R.S. § 25-211. If Arizona law applies, FCB's judgment lien could not be enforced against the co-op, because the judgment upon which the lien was based arose from a guaranty signed by Larry Miller and not Kari Miller, and a guaranty that is signed by only one of two spouses is not binding on the couple's community property under Arizona law.

Under California law, the co-op would not constitute community property because it was not acquired by the Millers while they were domiciled in California. *See* CAL. FAM. CODE § 760. Instead, it would constitute a tenancy-in-common. *See* CAL. CIV. CODE § 685. The application of

California law would permit the judgment lien to be enforced against Larry Miller's sole and separate interest in the co-op, because "[t]enants in common may each *unilaterally* alienate their shares through sale or gift or place encumbrances upon these shares." *United States v. Craft*, 535 U.S. 274, 280 (2002) (emphasis supplied). Thus, if California law applies, a judgment against Larry Miller would be enforceable only against his interest in the apartment, but *not* Kari Miller's separate interest.

## FACTUAL BACKGROUND

Against this backdrop for the choice-of-law issue presented by this case, we turn to a more detailed discussion of the underlying facts. Larry Miller was the President of Miller Holding Investments, Inc., which in turn was the General Partner of both El Paseo Partners, L.P. and El Rancho Partners, LP, both limited partnerships organized under California law. First Community Bank ("FCB") is a California corporation, doing business in the State of California, with its principal place of business in Sonoma County, California.

In December 2006, FCB extended credit to Paseo and Rancho in exchange for a Business Loan Agreement, a Promissory Note in the original principal amount of $5,744,000, and a Commercial Guaranty from Miller that personally secured repayment of all obligations owed to FCB under the Note and the Loan Agreement. All three of these contracts selected California's local law as the governing law. The Business Loan Agreement and the Promissory Note both stated on their face that they were accepted by FCB in California. Indeed, the guaranty given by Miller not only selected California as the governing law, it also provided that

"[a]ny married person who signs this Guaranty hereby expressly agrees that recourse under this Guaranty may be had against both his or her separate property and community property." Unfortunately, Paseo and Rancho could not live up to their obligations on the loans, and Miller defaulted on the guaranty.

## PROCEDURAL HISTORY

On October 24, 2008, FCB sued Larry and Kari Miller in the United States District Court for the District of Arizona. FCB moved for summary judgment as to liability and damages on Larry Miller's breach of the Commercial Guaranty, and also requested a "[r]uling that Kari Miller has received notice and due process in connection with this legal action, to the extent that any of the property subject or potentially subject to enforcement and execution upon the judgment, whether located in the State of Arizona, the State of California or elsewhere, is asserted to belong in whole or in part to her marital community." Complaint at 7, *First Community Bank v. Larry L. Miller and Kari Miller*, No. 2:08-cv-01952-NVW (D. Ariz. 2009), ECF No. 1. While the answer filed to the complaint alleged that neither the "Miller[s'] marital community property, nor Kari Miller's sole and separate property, is subject to the claims in [First Community] Bank's complaint," Answer at ¶ 4, *id.*, ECF No. 11, the Millers' "only legal opposition" to FCB's motion for summary judgment was that "California law requires [FCB] first to execute on collateral securing the loan," before making their motion. Order Granting Motion for Summary Judgment as to Liability at 2–3, *id.*, ECF No. 23.

The district court rejected this argument, and entered judgment against Larry Miller for the principal amount of

$5.744 million plus accrued interest and ancillary damages, for a total judgment of $6.373 million (the "Arizona judgment"). Judgment, *id*, ECF No. 36. The judgment made no reference to the Millers' community property, although the order granting the motion observed, in dictum and without undertaking a choice-of-law analysis, that "any [liability of the marital community] appears to be precluded by A.R.S. § 25-214(C)(2)." Order Granting Motion for Summary Judgment as to Liability at 3, *id.*, ECF No. 23. FCB registered this judgment in the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1963. *See* Certification of a Judgment to be Registered in Another District, *First Community Bank v. Miller*, No. 09-mc-80131-PJH (N.D. Cal. 2009), ECF No. 1.

As of the time that FCB registered its judgment in California, Larry and Kari Miller held an ownership interest, to which reference was made earlier, in real property located at 2170 Jackson Street, San Francisco, California, which consisted of their ownership share in Twenty-One Seventy Jackson Street Corporation and a leasehold in an apartment owned by the co-op.[1] On June 23, 2009, consistent with the manner in which a judgment lien is obtained, FCB recorded the California judgment in the Official Records of the San Francisco County Recorder's Office.

---

[1] California law treats corporations formed "primarily for the purpose of holding title to . . . improved real property, and [in which] all or substantially all of the shareholders of the corporation receive a right of exclusive occupancy in a portion of the real property," as real property. CAL. CIV. CODE § 6566. "[T]he correlative interest in the stock cooperative corporation" is also treated as an interest in real property. *See* CAL. CIV. CODE § 783.1.

Several years later, Larry Miller filed a petition for reorganization under Chapter 11 of the Bankruptcy Code in the District of Arizona. Miller's proceeding was later converted to a Chapter 7 liquidation. In the course of administering the Miller estate, the Chapter 7 Trustee, Maureen Gaughan, sold the Millers' co-op. FCB filed an adversary proceeding seeking a declaration that it held an enforceable judgment lien on the co-op, thereby granting it priority over the proceeds of the sale.

The bankruptcy court held that, "[b]ecause the Miller Judgment was registered in California, California law governs the enforceability of the Miller Judgment against Debtors' community property located in California, and under California law, Debtors' community property located in California is liable for satisfaction of the Miller Judgment." Judgment in Favor of First Community Bank at 4, *First Community Bank v. Miller*, No. 2:13-ap-00436-EPB (Bankr. D. Ariz. 2013), ECF No. 25. The Millers appealed to the district court.

## THE DISTRICT COURT'S DECISION

The district court framed the issue presented as "whether an Arizona judgment against a husband on his sole and separate debt may be executed against the Arizona couple's community property in California." *In re Miller*, 517 B.R. 145, 147 (D. Ariz. 2014). Answering this question in the negative, the district court held that "the Arizona federal judgment against the husband alone, later registered in a California federal court and recorded in California, does not lien their community real property in California." *Id.* Moreover, it continued that "[t]his is the rule by Arizona statute, and California choice of law principles yield to the

Arizona rule concerning Arizona domiciliaries." *Id.* Presumably drawing upon those principles, the district court concluded that "California has no interest in ousting Arizona marital law concerning obligations between husband and wife and of persons contracting with one spouse, and the California community property statute by its terms does not purport to do so." *Id.*

We reverse the judgment of the district court. While we agree that the co-op apartment does not come within the definition of community property, as that term is defined in Section 760 of the California Family Code, it does come within the definition of a tenancy-in-common. *See* CAL. CIV. CODE § 685. The interests of a co-tenant in such tenancies, which are presumed to be held in equal shares, *see Caito v. United California Bank*, 20 Cal. 3d 694, 705 (1978), are subject to the enforcement of a judgment lien. The issue, then, is whether California should yield to Arizona's community property law, and treat the Millers' co-op as community property not subject to the enforcement of a judgment. Applying California's choice-of-law rules, we hold that California law governs, and that the co-op would be treated as a tenancy-in-common, as defined in Section 685 of the California Civil Code, making Larry Miller's interest in the co-op subject to enforcement of the judgment lien.[2]

---

[2] The district court and the trustee relied on *Grappo v. Coventry Financial Corp.*, 235 Cal. App. 3d 496 (1991), for the proposition "that the property rights of a husband and wife are governed by the law of the couple's matrimonial domicile at the time of the acquisition of the property regardless of [where] the property is located." *Grappo*, however, involved a dispute between a husband and wife regarding their respective rights under family law in a piece of real property held in the wife's name, although claimed by the husband to be community property. After conducting a choice-of-law analysis, *id.* at 505–06, the California Court

## DISCUSSION

### I.  28 U.S.C. § 1963 Does Not Obviate the Need for a Choice-of-Law Analysis

FCB's principal argument on appeal is that the registration of the judgment against Larry Miller, pursuant to 28 U.S.C. § 1963, in the Northern District of California, was sufficient, by itself, to create an enforceable lien against the co-op.  While FCB is correct that § 1963 requires the use of California's lien creation rules, it does not do away with the task of conducting a choice-of-law analysis in the event that another state has an interest in application of its law.

A party may register and enforce a federal judgment in another district, and "[a] judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner."  28 U.S.C. § 1963.  "This system of enforcing federal judgments parallels the California and Arizona systems for enforcing sister state judgments."  *In re Miller*, 517 B.R. at 154.  Moreover, "[e]nforcement measures do not travel with the sister state judgment as preclusive effects do; such measures remain subject to the even-handed control of forum law."  *Baker v. Gen. Motors Corp.*, 522 U.S. 222, 235 (1998).

---

of Appeal rejected the husband's claim, based on its conclusion "that California, and not Nevada [where the property was located], is the state which has the most significant relationship to the parties and issues in this case."  *Id.* at 506.  The dispute in the present case involves a claim by a California-based third-party creditor, on property located in California, giving California an interest in the application of its law.

Thus, under California's enforcement procedures, when FCB registered the judgment rendered by the federal district court in Arizona in the Northern District of California, and formally recorded such judgment with the San Francisco County Recorder's Office, it acquired a judgment lien on the Millers' co-op. *See* CAL. CIV. PROC. CODE § 697.310(a). Nevertheless, perfection of a lien alone does not ensure that such a lien can be enforced against a particular piece of property—the property must be "subject to enforcement of the money judgment." *See Lezine v. Sec. Pac. Fin.*, 14 Cal. 4th 56, 65 (1996). Under California law, "*[e]xcept as otherwise provided by law*, all property of the judgment debtor is subject to enforcement of a money judgment." CAL. CIV. PROC. CODE § 695.010(a) (emphasis supplied).

While we are not aware of any California case that construes the term "except as otherwise provided by law" in a comparable context, the most reasonable construction suggests that it refers not just to the local law of California, but also to the laws of other states that may apply as a result of the application of California's choice-of-law rules. Our construction of the term is informed by a comparison with a similar term, which appears in the same Article of the California Code of Civil Procedure ("Enforcement of Money Judgments") as does § 695.010. California Code of Civil Procedure § 697.310(a), which provides the rule on the creation of judgment liens, contains an exception for circumstances "as otherwise provided by *statute*," rather than "as otherwise provided by *law*." CAL. CIV. PROC. CODE § 697.310(a) (emphasis supplied). This difference suggests to us that while the California Legislature intended to limit the exception in § 697.310(a) to certain express statutory carve-outs, it intended to make the exception contained in § 695.010(a) encompass California's whole law, including its

choice-of-law rules. *Cf.* RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971) ("Restatement") § 4(2) ("As used in the Restatement of this Subject, the 'law' of a state is that state's local law, together with its rule of Conflict of Laws.").

Our discussion would end here if this case were being litigated in California. Some additional discussion, however, is required. While California's choice-of-law rules apply here, they do so as a result of a somewhat indirect path, which we now trace. "In federal question cases with exclusive jurisdiction in federal court, such as bankruptcy," including this case, we apply federal choice-of-law rules. *See In re Lindsay*, 59 F.3d 942, 948 (9th Cir. 1995). Federal choice-of-law rules are based on the Restatement (Second) of Conflict of Laws. *See In re Vortex Fishing Sys., Inc.*, 277 F.3d 1057, 1069 (9th Cir. 2001). Restatement § 230 provides that, "[w]hether a lien creates an interest in land and the nature of the interest created are determined by the law that would be applied by the courts of the situs." Moreover, if the court of the situs "would have decided the particular question by reference to the local law of some other state, the forum will do likewise." Restatement § 230, cmt. b. As noted previously, California is the situs of the real property at issue, so we apply its choice-of-law rules to resolve the conflict in this case.

## II. Choice-of-Law Analysis

California applies the governmental interests mode of analysis to resolve choice-of-law problems. *See McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 87 (2010). Under this approach, we analyze three related questions: (1) does relevant law vary between the potentially affected jurisdictions?; (2) If there is a difference in law, does a true

conflict exist such that "each of the states involved has a legitimate but conflicting interest in applying its own law[?]"; (3) If there is a true conflict, "which state's interest would be more impaired if its policy were subordinated to the policy of the other state[?]" *See Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 111–12 (2006) (citations omitted).

We begin our analysis with Arizona law, and more specifically its community property law, and then proceed to discuss California law.

> Community property rests on a notion that husband and wife are a marital partnership (a 'community') and should share accordingly. . . . Because it can exist only between husband and wife and cannot be converted into separate property without the consent of both spouses, community property can be conveyed to a third person only as an undivided whole. . . . Prior to the 1960s, the husband was deemed to be manager of the community, but beginning in the late 1960s, all . . . community property states enacted statutes giving the husband and wife equal management powers. These statutes, however, differ in many details.

JESSE DUKEMINIER, PROPERTY 354–55 (2d ed. 1988).

Although Arizona and California both have community property laws, there is one difference between the two that gives rise to the necessity of a choice-of-law analysis. In Arizona, "[a]ny transaction of guaranty, indemnity or suretyship" requires the "joinder of both spouses"—a

requirement that has been construed to mean the signature of both spouses on the guaranty contract. Ariz. Rev. Stat. ("A.R.S.") § 25-214(C)(2). Thus, the statute "bars collection of the guaranteed debt from the community's property," unless both spouses sign the guaranty. *See Rackmaster Sys., Inc. v. Maderia*, 219 Ariz. 60, 64 (Ct. App. 2008).

California has no such dual-signature requirement with respect to either community property, joint property, or a tenancy-in-common. *Cf.* CAL. FAM. CODE § 1102(a); CAL. CIV. PROC. CODE § 695.010. Thus, all such property is subject to the enforcement of a money judgment, even where a guaranty underlying the judgment is signed by only one of two spouses. The difference between Arizona and California law, however, does not compel the conclusion that there is a "true conflict," as that term is understood in the choice-of-law context. The existence of such a conflict turns on whether the circumstances of the case implicate the policies underlying the ostensibly conflicting laws.

*Hamada v. Valley National Bank*, 27 Ariz. App. 433 (1976), contains a helpful discussion of the history and purpose of Arizona's dual-signature requirement. In *Hamada*, the Arizona Court of Appeals explained that "[t]he husband, as a member of the community, has no power under the law *without the knowledge and consent of his wife*, to use community assets to guarantee the payment of a debt of a stranger to the community, it deriving no benefit therefrom." *Id.* at 436 (emphasis supplied). It continued, "[t]his law has now been codified in A.R.S. Sec. 25-214(C)(2) which requires both spouses to join in any transaction of guaranty, indemnity or suretyship." *Id.* Thus, *Hamada* makes clear that the policy underlying Arizona's dual-signature requirement is to ensure that a spouse who lacks knowledge

of, and does not acquiesce to, a guaranty is not bound. *See also Vance-Koepnick v. Koepnick*, 197 Ariz. 162, 163 (Ct. App. 1999) ("The purpose of such statutes is to protect one spouse against obligations undertaken by the other spouse without the first spouse's knowledge and consent.").

The absence of the signature of one spouse, however, does not necessarily indicate that the non-signing spouse did not know of, or consent to, the execution of the guaranty. The signature requirement is simply the mechanism for avoiding a dispute as to this issue. *See All-Way Leasing, Inc. v. Kelly*, 182 Ariz. 213, 216 (Ct. App. 1984). A guaranty without both required signatures is "not per se void, only voidable by the nonsigning spouse." *Geronimo Hotel & Lodge v. Putzi*, 151 Ariz. 477, 479 (1986). Thus, the Arizona Court of Appeals has recognized that "there may be circumstances where a spouse may be estopped from disaffirming a contract." *Consol. Roofing & Supply Co., Inc. v. Grimm*, 140 Ariz. 452, 458 (Ct. App. 1984).[3]

The complaint filed by FCB in Arizona, which ended with the judgment against Larry Miller that underlies the lien at issue, put the Millers on notice that FCB planned to go after their community property. Nevertheless, the Millers did not

---

[3] Other community property jurisdictions with statutes similar to A.R.S. § 25-214 also recognize that estoppel principles may apply. *See, e.g.*, *Miller v. Johnston*, 270 Cal. App. 2d 289, 300 n.6 (1969) (holding that a spouse was bound by a conveyance of community property to which she was not a party, because of her "knowledge and acquiescence" to the conveyance); *Colo. Nat'l Bank of Denver v. Merlino*, 35 Wash. App. 610, 616 (1983) ("A community is estopped to deny liability due to the failure of one spouse to join a transaction when one spouse permits the other to conduct the transaction, both have a general knowledge of the transaction, and both are ready to accept the benefits which may come from it.").

defend on the ground that Kari Miller lacked "knowledge and acquiescence" sufficient to enable the Millers to rely on the absence of her signature on the guaranty. Indeed, as we explained earlier, rather than invoking A.R.S. § 25-214 in response to FCB's motion for summary judgment in the proceeding on the guaranty, their only legal opposition was based on FCB's alleged failure to comply with a California procedural rule. *See* Order Granting Motion for Summary Judgment as to Liability at 2–3, *First Community Bank v. Larry L. Miller and Kari Miller*, No. 2:08-cv-01952-NVW (D. Ariz. 2009), ECF No. 23. Moreover, although Larry Miller warranted in the guaranty that he had the "full power, right, and authority to enter into this guaranty," the trustee failed to come forward with any evidence in the bankruptcy court to suggest that Kari Miller did not either know of, or acquiesce to, the guaranty.[4]

While we do not invoke the doctrines of estoppel or waiver here, our discussion of it is intended to underscore the fact that a guaranty, signed by only one of two spouses, does not necessarily implicate the underlying policy of protecting a spouse who lacks knowledge of a guaranty. Indeed, here, because of the manner in which the Millers chose to litigate the complaint that gave rise to the underlying judgment, we do not know the extent that the underlying policy interest

---

[4] "[T]he ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary." *Campbell v. United States*, 365 U.S. 85, 96 (1961); *see also Nealey v. Transportacion Maritima Mexicana, S.A.*, 662 F.2d 1275, 1280–81 (9th Cir. 1980). Thus, if Kari Miller had challenged the validity of the lien prior to bankruptcy on the ground that she did not know of or acquiesce to the guaranty, the burden of proof would have been on her. Because the trustee is essentially relying on her asserted interest, the burden in bankruptcy should logically fall to her.

would be impaired by the enforcement of the judgment against the couple's community property.

On the other hand, under the circumstances here, California does have a significant interest in effectuating its policy regarding enforcement of judgments in favor of California creditors against real property located there, whether the property constitutes community property or a tenancy-in-common. "California, as does every state, has a substantial interest in the economic health of corporations which do business within its borders. It derives substantial sales and income taxes, as well as other revenues, directly and indirectly from a corporation's activities within the state." *In re Air Crash Disaster Near Chi., Ill. on May 25, 1979*, 644 F.2d 594, 614 (7th Cir. 1981). Moreover, California also has an interest in fostering the growth of commercial activities that require ready access to credit—a policy that would be undermined by limiting the ability of California creditors to enforce obligations for activities undertaken in California and made subject to the operation of California law by consent of the parties. Indeed, when Larry Miller sought credit in California to finance his business venture, he took advantage of the credit environment fostered by what the district court described as California's "general policy favoring creditors." *In re Miller*, 517 B.R. at 149 n.1.

These considerations "reflect[] the principle articulated by the California Supreme Court that the policy of protecting the creditors of a spouse outweighs the policy of protecting family income." *Ordlock v. Comm'r*, 533 F.3d 1136, 1139 (9th Cir. 2008) (internal ellipses and alterations omitted). So too does the fact that California renders the *entire* community property of a married couple subject to enforcement of a guaranty—even if the guaranty was made solely for the

benefit of a single spouse.  *See Lezine v. Sec. Pac. Fin. Servs., Inc.*, 14 Cal. 4th 56, 64 (1996).  While the co-op owned by the Millers did not come within the definition of community property in California, we refer to the manner in which community property is treated there simply to illustrate the strength of California's interest in the enforcement of the judgment lien against the co-op apartment located in San Francisco.

The policy interests discussed above are especially strong where, as here, the law chosen by the parties in their various agreements (including the guaranty) includes California's creditor-friendly interest described above.  Indeed, the Supreme Court of California has adopted § 187 of the Restatement, *see Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 464–65 (1992), which upholds "[t]he law of the state chosen by the parties to govern their contractual rights and duties . . . , even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue." Restatement § 187(2). Section 187 is a policy "providing for incorporation by reference" that enables parties "to determine the terms of their contractual engagements," not a choice-of-law rule as such.  *Id.* § 187, cmt. c.

The purposes underlying this section "are to protect the justified expectations of the parties and to make it possible for them to foretell with accuracy what will be their rights and liabilities under the contract."  *Id.* § 187, cmt. e. Moreover, the Restatement recognizes that, in multi-state transactions such as the one at issue, "letting the parties choose the law to govern the validity of the contract and the rights created thereby" is the better route to ensure "certainty and predictability of result."  *Id.* Indeed, an even more

specific provision, Restatement § 194, provides that "[t]he validity of a contract of suretyship and the rights created thereby are determined, in the absence of an effective choice-of-law by the parties, by the law governing the principal obligation which the contract of suretyship was intended to secure," subject to exceptions similar to those applicable to § 187.[5]  Again, there *was* an effective choice-of-law made by the parties.  Moreover, "the principal obligation that the contract of suretyship was intended to secure"—the Promissory Note —was governed by "the laws of the State of California without regard to its conflicts of law provisions." Those laws would make the lien enforceable against Larry Miller's ownership interest as a co-tenant of the co-op apartment.

Neither of the exceptions to the incorporation by reference rule of § 187, which also apply to the rule of § 194, is present here.  Specifically, this is not a case in which "the chosen state has no substantial relationship to the parties or the transaction," Restatement § 187(2)(a), nor would the chosen law "be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue." *Id.* § 187(2)(b). While Arizona may have an interest in the determination of this issue, we cannot say that its interest is "materially greater . . . than [that of] the chosen state," particularly where the record does not adequately show whether or not Kari Miller had knowledge of, or consented to, the guaranty.  Nor, to use the test applied in cases of a true conflict, is Arizona's interest more substantially impaired than that of California.

---

[5] "'Suretyship,' as here used, includes 'guaranty,' for . . . there has never been general agreement as to what distinction, if any, should be drawn between the two terms."  Restatement § 194, cmt. a.

We recognize that Larry Miller's agreement to the application of California law does not bind Kari Miller. Nevertheless, the agreement should bind Larry Miller, and permit the enforcement of that agreement against him as a tenant-in-common.   Moreover, the enforcement of the agreement in that way protects Kari Miller's one-half interest in the property as a co-tenant.  Thus, the underlying purpose of A.R.S. § 25-214(C)(2), which is "to protect one spouse against obligations undertaken by the other spouse without the first spouse's knowledge and consent," *see Vance-Koepnick*, 197 Ariz. at 163, is accommodated to a significant degree, rather than substantially impaired, by application of California law.

California's interest is similarly accommodated, because FCB, the California creditor that was the beneficiary of the guaranty, is able to recover the share of proceeds from the sale of the co-op attributable to Larry Miller's interest. Application of Arizona law would defeat that interest entirely.  Under these circumstances, even if there were a true conflict, we would apply California law because its "interest would be more impaired if its policy were subordinated to the policy of the other state." *See Kearney*, 39 Cal. 4th at 112. In sum, we agree with FCB "that California [has] a compelling interest in applying its law," under the circumstances presented here.

## CONCLUSION

The judgment of the district court is **REVERSED AND REMANDED** for proceedings consistent with this opinion.