NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

T. DENNY SANFORD,
*Plaintiff/Appellant*,

v.

DNA INVESTMENTS, L.L.C., et al.,
*Defendants/Appellees*.

No. 1 CA-CV 20-0353
FILED 5-6-2021

Appeal from the Superior Court in Maricopa County
No.  CV2017-001884
The Honorable Roger E. Brodman, Judge

**AFFIRMED**

COUNSEL

Stone Law Firm PLC, Scottsdale
By C. Randall Stone
*Counsel for Plaintiff/Appellant*

Baskin PLC, Scottsdale
By Alan S. Baskin, Mladen Z. Milovic
*Counsel for Defendants/Appellees*

---

**MEMORANDUM DECISION**

Judge James B. Morse Jr. delivered the decision of the Court, in which Presiding Judge D. Steven Williams and Chief Judge Peter B. Swann joined.

---

**M O R S E**, Judge:

¶1        T. Denny Sanford appeals from a judgment finding David and Abby Harbour not personally liable on a promissory note.  For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        In February 2012, David Harbour, the managing member of DNA Investments, LLC, negotiated a promissory note ("Note") with T. Denny Sanford, the chairman of First Premiere Bank.  The Note set forth terms for repayment on a $1 million loan.

¶3        The Note identified "DNA Investments, LLC" as "Borrower" and "Denny Sanford" as "Lender" in prominent letters at the top of the document.  The Note also defined the parties as "DNA Investments LLC, a Delaware limited liability company ('Borrower')" and "Denny Sanford, an individual ('Lender['])."  The Note stated that its terms were "binding upon Borrower, and upon Borrower's heirs, personal representatives, successors and assigns," and characterized the obligations under the Note as "joint and several."  David initialed the Note in the space marked for "Borrower's Initials" and signed on the signature line under "BORROWER[.]"  Nothing was printed below the signature line.  The Note did not specifically indicate whether David signed in a representative or personal capacity.

¶4        Sanford received regular monthly payments from DNA Investments until September 2014, at which time the payments stopped.  In February 2017, Sanford filed a complaint against DNA Investments seeking the outstanding amount due on the loan.  Sanford later amended his complaint to name David and his wife, Abby, as codefendants along with DNA Investments.

¶5        After a bench trial, the superior court granted a $1,418,261.01 judgment against DNA Investments and dismissed the complaint against David and Abby.

2

¶6          The court found the Note was ambiguous but, after considering the available evidence, found that David had "demonstrated by the preponderance of the evidence that [he] was not signing as an individual."   In addition to the Note's clear identification of DNA Investments as "Borrower," the court noted that Sanford had wired the loan money to DNA Investments' bank account, DNA Investments paid each of the twenty-eight loan payments to Sanford, and there was no evidence any money was transferred directly from David to Sanford.  The court found that Sanford was sophisticated enough to know how to request a personal guaranty, had he wanted to secure one from David.  The court also credited David's testimony that Sanford, before signing the Note, agreed the loan was only to DNA Investments and requested to read the company's operating agreement to verify that David had authority to sign on its behalf. While Sanford testified he would not have agreed to the loan had he believed David was signing merely as a representative, he could not remember the details of the conversations prior to him signing the Note.

¶7          The court found that Abby was not personally liable because she never signed the Note.  The court cited A.R.S. § 25-214(C)(2) as a "second, independent reason [why] neither [Abby] nor the Harbour's community property would be liable," explaining that "one spouse, acting unilaterally, [cannot], by signing a promissory note during marriage, convert a separate obligation into a community one."  The court also noted that the absence of Abby's signature cut against Sanford's argument that the parties intended for David to be personally liable on the Note.

¶8          The court also rejected Sanford's request to pierce DNA Investments' corporate veil.

¶9          Sanford timely appealed.  We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. § 12-2101(A)(1).

**DISCUSSION**

¶10          Whether an authorized representative becomes personally liable by signing an instrument with his or her own name — rather than the name of the person or entity he or she is representing — is governed by A.R.S. § 47-3402(B).  Where the form of the representative's signature "shows unambiguously that the signature is made on behalf of the represented person who is identified in the instrument, the representative is not liable on the instrument."  A.R.S. § 47-3402(B)(1).  By contrast, a representative is presumed to be liable if the form of signature fails to show unambiguously that it was made in a representative capacity, or if the

3

represented person is not identified in the instrument, and the holder "took the instrument without notice that the representative was not intended to be liable on the instrument." A.R.S. § 47-3402(B)(2). A representative can rebut the presumption by "prov[ing] that the original parties did not intend for the representative to be liable on the instrument." *Id.*

## I.    Liability of David Harbour.

**¶11**        Sanford acknowledges the Note is ambiguous and that A.R.S. § 47-3402(B)(2) "applies to the facts in this matter." When a contract is ambiguous, "the parties may offer evidence to help interpret it, and the construction thus becomes a question" of fact. *Pasco Indus., Inc. v. Talco Recycling, Inc.*, 195 Ariz. 50, 62, ¶ 52 (App. 1998). We will affirm a trial court's factual determinations unless clearly erroneous. *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 51, ¶ 11 (App. 2009). "A finding of fact is not clearly erroneous if substantial evidence supports it, even if substantial conflicting evidence exists." *Kocher v. Dep't of Revenue*, 206 Ariz. 480, 482, ¶ 9 (App. 2003).

**¶12**        Sanford argues that construing the Note against personal liability for David renders superfluous the Note's language that its terms are "binding upon . . . Borrower's heirs," and that its obligations are "joint and several." The superior court acknowledged that corporations do not have "heirs" and that "joint and several" liability would be "an odd requirement if only DNA Investments was liable on the Note." Nevertheless, the court found the Note ambiguous because it clearly identified the "Borrower" as "DNA Investments, LLC, a Delaware limited liability company," did not include a personal guaranty, never mentioned David's name within the printed document, and neither David's signature, nor the space below the signature line, specified whether he was signing in a personal or representative capacity. After examining the available evidence,[1] the court found the parties had not intended for David to be personally liable on the Note, and that the references to "heirs" and "joint and several" liability were merely "standard, boilerplate terms that made

---

[1]        Sanford challenges the court's reliance on David's testimony about conversations prior to signing the Note, which Sanford characterizes as evidence of a separate oral agreement used to contradict the Note's written terms. David did not testify to the existence of a separate oral agreement but merely explained the parties' intent so as to interpret the Note. *Supra* ¶ 6. And, even apart from the testimony, there is substantial evidence, *see, e.g., supra* ¶ 6, supporting the court's finding that the parties did not intend for David to be personally liable.

their way into the agreement but did not change the definition of 'Borrower.'"

**¶13** Sanford correctly points out that "a contract should be interpreted, if at all possible, in a way that does not render parts of it superfluous." *Taylor v. State Farm Mut. Auto. Ins. Co.*, 175 Ariz. 148, 158 n.9 (1993). But Sanford's proposed construction of the Note also contains superfluous language — the careful identification of DNA Investments as "a Delaware limited liability company ('Borrower')" and of Sanford as "an individual" would be superfluous if "Borrower" were construed to mean *both* a Delaware limited liability company *and* an individual. Because Sanford fails to show that the court clearly erred in construing the Note and evaluating the competing evidence, we affirm the superior court's ruling. *See Gutierrez v. Gutierrez*, 193 Ariz. 343, 347, ¶ 13 (App. 1998) (noting a reviewing court "will defer to the trial court's determination of . . . the weight to give conflicting evidence").

## II. Liability of Harbour Marital Community Property.

**¶14** Sanford argues the superior court erred in finding the Harbour marital community not liable. But Arizona law "bars collection of [a] guaranteed debt from the community's property" unless both spouses signed the guarantee. *See Rackmaster Sys., Inc. v. Maderia*, 219 Ariz. 60, 64, ¶ 18 (App. 2008) (interpreting A.R.S. § 25-214(C)(2)); *see also In re Miller*, 853 F.3d 508, 516 (9th Cir. 2017).

**¶15** Sanford qualifies that he "never claimed that Harbour was liable under the Note as a *guarantor*," and asserts that "Harbour" is liable under A.R.S. § 47-3401(B)(2). It is unclear whether Sanford is referring to Abby, David, or both when he claims that "Harbour" is liable. Nor are we persuaded by Sanford's argument for liability under A.R.S. § 47-3401(B)(2), a statute which merely provides that signatures may be made by "the use of any name, including a trade or assumed name, or by a word, mark or symbol executed or adopted by a person with present intention to authenticate a writing."

**¶16** Based on the lack of legal authority to support Sanford's claim, we reject this argument. *See Bennigno R. v. Ariz. Dep't of Econ. Sec.*, 233 Ariz. 345, 348, ¶ 11 (App. 2013) (noting that courts can summarily reject arguments "[b]ased on the lack of proper and meaningful argument"); *see also* ARCAP 13(a)(7) ("An 'argument' . . . must contain . . . contentions concerning each issue presented for review, with supporting reasons for

each contention, and with citations of legal authorities and appropriate references to the portions of the record on which the [party] relies.").

### III.    Piercing the Corporate Veil.

**¶17**        Sanford argues the superior court erred in declining to pierce the corporate veil and asserts that DNA Investments was merely David's "alter ego." Generally, a member of an LLC is "not personally liable, directly or indirectly, . . . for a debt, obligation or other liability of the company . . . solely by reason of being or acting as a member or manager." A.R.S. § 29-3304(A). Thus, "the personal assets of a corporate officer may not normally be reached to satisfy corporate liabilities." *Loiselle v. Cosas Mgmt. Grp., LLC*, 224 Ariz. 207, 214, ¶ 30 (App. 2010). Courts will, however, disregard the corporate entity and pierce the corporate veil "if there is sufficient evidence that 1) the corporation is the 'alter ego or business conduit of a person,' and 2) disregarding the corporation's separate legal status is 'necessary to prevent injustice or fraud.'" *Id.* (first quoting *Dietel v. Day*, 16 Ariz. App. 206, 208 (1972); and then quoting *State v. Angelo*, 166 Ariz. 24, 27 (App. 1990)). We will affirm a trial court's decision not to pierce the corporate veil if it is supported by substantial evidence. *Chapman v. Field*, 124 Ariz. 100, 102 (1979).

**¶18**        Sanford references DNA Investments' travel, meal, and entertainment expenses and claims that "[g]etting money from investors, using the money for an extreme lavish lifestyles [sic] is common in alter ego cases." But Sanford fails to explain how DNA Investments' expenses were improper or why they would justify piercing the corporate veil. Sanford also points to a federal indictment charging David with three counts of wire fraud and nineteen counts of transactional money laundering, and claims the loan to DNA Investments was "[c]learly . . . part of this fraudulent scheme . . . ." But the court reviewed the indictment and found that it "doesn't mention [Sanford] or events surrounding the instant litigation." Moreover, the court found evidence of a good faith effort on the part of DNA Investments to repay the loan in accordance with the Note, including twenty-eight loan payments, totaling $970,000, from DNA Investments to Sanford. Sanford fails to show the superior court's decision not to pierce the corporate veil was unsupported by substantial evidence.

### IV.    Costs and Fees on Appeal.

**¶19**        Both parties request their attorney fees and costs on appeal. In our discretion, we grant the Harbours their reasonable attorney fees on appeal. *See* A.R.S. § 12-341.01(A) (authorizing courts to award reasonable

attorney fees to the successful party in actions arising out of contract). As the prevailing party, the Harbours are entitled to their costs on appeal.

## CONCLUSION

¶20        We affirm the superior court's judgment and grant the Harbours their attorney fees and costs on appeal, upon compliance with ARCAP 21.



AMY M. WOOD • Clerk of the Court
FILED:      AA